WALTER E. LUCE vs. PARK STREET MOTOR CORPORATION.

Androscoggin.   Opinion October 20, 1923.

*A written agreement prevails over an alleged subsequent oral agreement upon which
the plaintiff relied to support his action.*

The contract is clearly one of employment only, and the commission was payable
on sales of Studebaker cars "to prospective purchasers which the said Walter
E. Luce may or will personally turn over to the said corporation."

The testimony of the plaintiff that there was another and later hiring is too
flatly contradictory of his written agreement to justify its acceptance; no
reason for making another contract appears.

On motion for a new trial.   An action of assumpsit upon an
account annexed to recover a balance of $800 claimed to be due as
commissions for furnishing defendant prospects for the purchase of
automobiles, under an express contract.   The jury rendered a
verdict for the plaintiff for the full amount claimed with interest,
and defendant filed a general motion for a new trial.   Motion sus-
tained.   New trial granted.

The case is fully stated in the opinion.

*Frank A. Morey*, for plaintiff.

*Benjamin L. Berman and Jacob H. Berman*, for defendant.

SITTING:  CORNISH, C. J., HANSON, PHILBROOK, MORRILL,
WILSON, JJ.

MORRILL, J.   This cause is before us upon defendant's general
motion to set aside the verdict.   The action is assumpsit, upon an
account annexed to recover a balance alleged to be due the plaintiff
for commissions on motor cars sold by the defendant corporation
to so-called "prospects," whose names were upon a list delivered to
defendant by plaintiff when the latter sold to the former the good-
will and Studebaker agency rights of his business, in January, 1921;
the plaintiff does not claim to have personally sold any of the cars,

on the sale of which he now claims commission; but he claims to be entitled to commissions on sales of cars by other salesmen of defendant, as part of the consideration for the good-will and agency rights of the business sold.

It appears that on January 29, 1921, plaintiff sold to the defendant all his stock in trade consisting of automobiles, new and second-hand, automobile supplies, stock and accessories; "also the good-will of the business hitherto conducted by him and all his rights in and to the Studebaker Sales Agency." The consideration for the sale of the physical property was fixed by the written agreement of sale; the consideration for the transfer of the good-will and agency rights was not so fixed, and probably could not be agreed upon until the assent of the Studebaker Automobile Company to the transfer of the agency had been received.

The plaintiff demanded sixty-five hundred dollars for the good-will and agency rights, and as an inducement produced a list of ninety-two so-called "prospects," persons supposed to be interested in the purchase of Studebaker cars. The consideration was finally settled by a note of the defendant for five thousand dollars and the execution of an agreement dated February 8, 1921, upon which this action is based; the list of "prospects" was delivered to defendant, plaintiff retaining a copy, when the agreement was executed.

The right of the plaintiff to maintain this action depends upon the construction of the agreement last referred to; it is therefore here copied in full:—

"Memorandum of agreement made this eighth day of February, A. D. 1921, by and between Walter E. Luce of Lewiston and the Park Street Motor Corporation of Lewiston, witnesseth as follows:—

1. The said Park Street Motor Corporation hereby agrees to pay to Walter E. Luce a commission of 5% on the selling price of all sales of Studebaker cars, which may be made to prospective customers, which the said Walter E. Luce may or will personally turn over to the said corporation.

2. The said Luce does hereby agree to render faithful services to said corporation in obtaining such prospective customers and to exclusively handle the Studebaker cars, for and during the automobile season of 1921.

3. The total amount of commissions to be paid to said Luce for the said services during said entire automobile season shall not

exceed in the aggregate from all commissions, the total of fifteen hundred dollars ($1,500.00). All of the excess revenue and profit over and above the said fifteen hundred dollars ($1,500.00) shall inure entirely to the benefit of said corporation.

4. If, and in event, the said corporation is required to repossess itself of any car delivered to any customer of said Luce, then the said Luce is to reimburse the said corporation for the proportion of the commission on said refund or reclamation.

Dated at Lewiston, aforesaid, this day and year first above written.

HERMAN E. SHAPIRO          (Seal)

SAMUEL SHAPIRO          (Seal)

WALTER E. LUCE."

Herman E. Shapiro is President, and Samuel Shapiro is Treasurer of defendant corporation; both plaintiff and defendant treat this instrument as a contract of the corporation.

It is further not disputed that the plaintiff worked for defendant during the season of 1921, as a salesman upon a five per cent. commission basis; he devoted only a part of his time to that employment; his commissions upon cars sold by him amounted to about eight hundred dollars which he has received; the names of some persons to whom he sold cars, for which he received commissions included in the eight hundred dollars, were upon the list of "prospects" delivered to defendant when the contract of February 8, 1921 was executed.

So far the parties agree; from this point their contentions are squarely conflicting.

The defendant has set out the latter contract in its pleadings and Samuel Shapiro, its Treasurer, with whom Luce had his dealings, contends that having paid the plaintiff his commissions on all cars sold by him, nothing further is due; he denies that the corporation was to pay Luce commissions on cars sold by others to persons on the list, or anything for the list.

The plaintiff denies that he worked for defendant under the agreement of February 8, 1921; he denies that he signed any contract to sell Studebaker cars; he testifies that he did not hire out to defendant for about three weeks after the above agreement was made, and that his employment had nothing to do with the agreement. Admitting that he signed it, he in effect disavows three paragraphs out of

four, of that agreement. The language of those paragraphs is so clear and unambiguous, and plaintiff's testimony as to his employment is so squarely contradictory to his acknowledged agreement, that his testimony on that point is inherently improbable and cannot be accepted as true. It is difficult to understand why he should testify in flat contradiction to his signed contract, unless he had forgotten its tenor.

The plaintiff, however, bases his present claim for "Commissions for names of prospects furnished to the defendant of persons wishing to purchase automobiles," upon the agreement which he in part disavows in his testimony, and he testifies that his written contract, as he understood it, was "simply for the $1500 due me if they sold cars enough to amount to that, if not, whatever the amount came to."

This construction is not tenable; the language is clear and unambiguous; not a word is to be found as to commissions on cars sold by others, as to cars sold to persons named on any list, or as to any list turned over to the corporation. The contract is clearly one of employment only, and the commission of five per cent. was payable on sales of Studebaker cars "to prospective purchasers which the said Walter E. Luce may or will personally turn over to the said corporation." As stated above, the testimony of plaintiff that there was another and later hiring is too flatly contradictory of his written agreement to justify its acceptance; no reason for making another contract appears. By his written agreement he was placed on precisely the same footing as other salesmen of the defendant, and given the opportunity to earn by sales to prospective customers the fifteen hundred dollars, which he had asked for the good-will and agency rights in addition to the amount of the note given him.

After the plaintiff had been examined in direct, and cross-examined, he was permitted to testify upon redirect examination, without objection, as follows:

"Q. Now wont you please state again what your arrangement was about this list and how you happened to turn in the list as a part of the assets? Tell us about it?

"A. Well, I asked him $6,500, and he said he wouldn't give that in cash, and I told him about the eighty to one hundred prospects I had, all good prospects, and he says 'I will tell you what I will do, I will give you $5,000 on a note, and you turn in your prospects and I

will give you 5 per cent. on any prospects what *we* sell a car to, factory price, and if it amounts to $1500 I will give it to you, if it amounts to more than that it is my gain, and if it is less it is your loss.' Now that was the understanding. I took it that way because I knew the prospects were good and would amount to that amount of money."

This testimony as to a conversation had before the written contract was signed, cannot be considered for the purpose of contradicting, or altering the later written contract; but it is worthy of notice that change one word in this statement—change "we," printed in italics, to "you" . . . and the testimony supports the construction which we have placed upon the written contract to which the oral agreement was later reduced, and in which it was merged. This construction in the light of the attendant circumstances and the purposes for which the contract was made is reasonable, probable, and in accord with the course of action of prudent business men, and reflects the intentions of the parties at the time.

The contract presented and relied upon by the plaintiff does not support his action, and the entry must be,

*Motion sustained.*
*New trial granted.*